**Affirmed and Opinion filed April 19, 2012.**



In The

# Fourteenth Court of Appeals

———————————

## NO. 14-10-01090-CR

———————————

**JOHN FRANGIAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 262nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 1256414**

## O P I N I O N

Appellant John Frangias appeals his conviction for sexual assault and argues that his case should be retried because he received ineffective assistance of counsel. According to appellant, there was a witness who would have corroborated his version of events, and his attorneys' failure to procure the witness's testimony, or to move for a continuance in order to do so, constituted ineffective assistance of counsel. Appellant additionally contends that the trial court abused its discretion in excluding the testimony of

a lay witness as to appellant's health issues. Because the trial court did not abuse its discretion in denying appellant's motion for new trial on any of these grounds, we affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Appellant was convicted of sexually assaulting Canadian resident K.H. in July 2008 while she was a guest at a hotel in downtown Houston owned by appellant's family. The State and the defense agree that K.H. originally reserved a room at a different hotel, but because it was overbooked, its staff sent K.H. to appellant's hotel. They also agree that K.H. checked into appellant's hotel on Monday, July 7, 2008; that on the three following days, appellant drove K.H. and other guests to or from the venue where they were attending a convention; and that K.H. checked out on Friday, July 11, 2008. Beyond this, appellant's version of events differs sharply from that of the State.

To provide some context for the arguments presented on appeal, we summarize the testimony of the key witnesses.

### A.  The State's Case

On the evening of Thursday, July 10, 2008, appellant dropped K.H. off at a convention event. K.H. testified that she had two glasses of wine at the event, then accompanied her business partner to his hotel room where she had another glass of wine. She stated that she returned to appellant's hotel at 11:00 p.m. According to K.H., there was no one in the lobby when she entered and started up the stairs, but when she was nearly to the second floor, she saw appellant downstairs speaking to someone. He then excused himself and started up the stairs behind her. K.H. testified that she just wanted to go to her room, so she quickened her pace, but appellant did the same, and when she opened her door with her key, appellant pushed her into the room. K.H. stated that she initially laughed and told appellant that she was married and that he had to leave, but appellant grabbed her and kissed her. She stated that appellant pulled her hair as he fondled her breasts and genitals, but she was able to push him away enough to see that the door to her room was

2

still open. She testified that when appellant saw her look in that direction, he pushed the door closed. As K.H. described it, appellant unbuttoned and unzipped her jeans, which fell to her knees, and when she tried to pull her jeans back up, appellant pushed her back onto the bed. She testified that she closed her eyes and put her hands over her face, and appellant removed her jeans and underwear. According to K.H., appellant had vaginal intercourse with her, then went into the bathroom and she heard water running. K.H. continued to cover her face, and she heard appellant dress and leave without speaking to her again. She stated that she showered and brushed her teeth, but decided not to call the police because she hadn't screamed or fought back. She related that she telephoned her husband at 11:24 p.m., but did not tell him what had occurred; she also checked her email and spent a half-hour on a business phone call. K.H. testified that she left the hotel at 7:00 a.m. the next day and took a cab to the hotel where her business partner was staying. The two of them went to the airport, and after her business partner's flight departed, K.H. emailed a friend to say that she had been raped. K.H. then flew back to Canada, and upon her arrival, she left a telephone message for another friend who was a former police officer. When the former police officer returned her call, K.H. described what had happened to her. Her husband heard K.H. crying and went to investigate. After K.H. told him what had happened, he took her to the police station to report the offense. Although K.H. was examined, there was no physical evidence of assault.

**B.    The Defense**

In his defense, appellant attempted to show that (1) he was physically incapable of forcible rape; (2) when K.H. returned to the hotel on July 10, 2008, she was so intoxicated that she was confused, irrational, emotional, and incapable even of standing up unassisted; and (3) appellant helped the intoxicated K.H. upstairs, but never entered her room.

Through an interpreter, appellant's wife Maria testified that appellant has had substantial problems with kidney stones for the past three or four years. He had surgery for the problem in 2007, and had several subsequent procedures to dissolve the stones.

3

Since he has had a medical device inserted, appellant has found erections to be very painful.

Ron Hansard testified that he stayed at appellant's hotel from about November 2007 to August 2008; that he was present when K.H. initially checked in; and that he heard her try to negotiate a lower rate. Hansard also stated that there initially was a man with her, but neither of them had luggage with them, and Hansard didn't see the man again. Hansard testified that he saw K.H. a couple of times later in the week, and it was his impression that she had been drinking. Hansard further testified that he later saw K.H. angrily ask appellant for a refund, but he did not see appellant give her any money.

Registered nurse Mindy Colson testified that in July 2008, she went to appellant's hotel when she was unable to find a room elsewhere.[1] Colson testified that appellant said he would try to make a room available. Colson stated that while she waited, she observed appellant "running around and doing things," but he looked sick and stressed. To Colson, appellant appeared sweaty, "somewhat hobbled," and in pain. She related that at around midnight, appellant saw a woman lying on her stomach in front of the entrance to the hotel. According to Colson's description, the woman had a large build, was dressed in jeans and a T-shirt, appeared to be in her early 30's, and smelled of alcohol. When appellant turned the woman over, the woman awoke and seemed disoriented. She began crying and then screaming. Colson testified that when appellant began trying to help the woman up, the woman grabbed him and tried to kiss him. When appellant freed himself, the woman staggered into a wall. Colson stated that appellant and another man helped the woman up the stairs, and appellant came back to the lobby approximately five minutes later. He then took towels upstairs and returned within two minutes. Colson stated that she left sometime after midnight without ever getting a room.

---

[1] From the transcript, it is not clear when Colson arrived at the hotel. She stated that it was "probably around 1ish," and defense counsel asked, "1:50 p.m.?" Colson replied, "Yes, at night 2200."

Appellant testified that when K.H. checked in, a man was with her. Appellant did not see her again until the next day when he drove K.H. and another guest to the convention center. He stated that K.H. smelled of alcohol when he picked her up at noon and when he drove her to the convention center the next day. He related that K.H. called him for a ride back to the hotel, but he refused because he was in pain. According to appellant, he and K.H. argued that evening about the room rate and about his failure to pick her up from the convention center that afternoon. He testified that when he drove K.H. and another woman to the convention center the next morning, K.H. again smelled strongly of alcohol and appeared to be intoxicated. According to appellant, K.H. was rude to him and asked him questions that upset him, so he loudly told her not to come into his car or back inside the hotel.

Appellant testified that he next saw K.H. at about 12:30 a.m. as she lay on the ground outside of the hotel. He stated that he slapped her face and opened her eyes to see if she was still alive and tried to help her stand up. As he described it, K.H. held onto him and to the door handle and pulled herself up. He stated that she continued to hold him and push him, so he pushed her away. According to appellant, K.H. alternately cried, laughed, and sang. He stated that when K.H. started to go upstairs, she fell twice, so he and part-time maintenance worker Jay Sotomayor helped her upstairs. Appellant further testified that he and Sotomayor followed K.H. as she staggered to her room, and when it appeared that she had no key, he checked to see if he accidentally had brought the master key with him. Finding that he had, he opened K.H.'s room and she fell to the floor. When asked at trial to describe what happened next, appellant answered, "Just crack the door, and I help come in, get up, and I let her to go to her room, and I leave."[2] Appellant stated that he then went to Hansard's room. According to appellant, Hansard wanted to transfer some information to or from a USB drive, so appellant went downstairs to get one.

---

[2] We quote this statement because it is ambiguous, and different listeners could have different impressions as to whether this statement meant that appellant did or did not enter the room.

5

He stated that while he was downstairs, K.H. called for more towels, so he got some from the laundry and took them upstairs to her, then went to Hansard's room. Appellant testified that he next saw K.H. at about 10:40 a.m. He stated that she had planned to stay another night, but appellant insisted that she leave. Finally, appellant testified that the pain from his kidney problems was such that he could not work and could not have an erection.

To impeach appellant's testimony, the State offered evidence that six months before the alleged assault, appellant complained of erectile dysfunction and his doctor prescribed Viagra. In addition, the State introduced medical records showing that four months after the charged offense, appellant had a medical test for which he was required to run on a treadmill, and the examiner noted in appellant's records that he had excellent exercise capacity.

A jury convicted appellant and assessed punishment at eight years' confinement in the institutional division of the Texas Department of Criminal Justice. Appellant's motion for new trial was overruled by operation of law.

## II. ISSUES PRESENTED

In four issues. appellant contends that his state and federal constitutional rights to effective assistance of counsel were violated in that his trial attorneys failed to procure Jay Sotomayor's testimony, either live or by deposition, or in the alternative, failed to move for a continuance to do so. In a fifth issue, appellant argues that we must reverse his conviction because the trial court erroneously excluded Hansard's proffered testimony about the state of appellant's health in July 2008.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

We review claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). This test is applied to claims arising under the Texas Constitution as well as those arising under

the United States Constitution. *Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986). Under the *Strickland* test, an appellant must prove that his trial counsel's representation was deficient and the deficient performance was so serious that it deprived the appellant of a fair trial. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. To establish both prongs, the appellant must prove by a preponderance of the evidence that counsel's representation fell below the objective standard of prevailing professional norms, and there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different. *Id*. at 690–94, 104 S. Ct. at 2066–68. *See also Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (explaining that "reasonable probability" as used in the prejudice prong is "probability sufficient to undermine confidence in the outcome" of the proceeding) (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064). An appellant's failure to satisfy one prong makes it unnecessary for a court to consider the other prong. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

Our review of defense counsel's performance is highly deferential, beginning with the strong presumption that the attorney's actions were reasonably professional and were motivated by sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). A sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). Instead, we "review the totality of the representation and the circumstances of each case without the benefit of hindsight." *Lopez*, 343 S.W.3d at 143 (citing *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006)). Under the totality of the circumstances, a single error may be so egregious that it satisfies the *Strickland* test. *Id*. *See, e.g.*, *Vasquez v. State*, 830 S.W.2d 948, 951 (Tex. Crim. App. 1992) (counsel's failure to request a jury instruction on the issue of necessity after the issue was raised by the appellant's testimony was sufficient both to demonstrate counsel's deficient performance and to undermine confidence in the verdict). But, isolated errors of omission or commission usually will not render counsel's performance ineffective. *Robertson*, 187 S.W.3d at 483. Moreover, "[i]t is not sufficient

that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). Rather, to establish that trial counsel's acts or omissions were outside the range of competent professional assistance, a defendant must show that counsel's errors were so serious that he was not functioning as counsel. *Patrick v. State*, 906 S.W.2d 481, 495 (Tex. Crim. App. 1995).

Here, appellant raised his allegations of ineffective assistance of counsel through a motion for new trial. We may not reverse the trial court's denial of a motion for new trial absent an abuse of discretion. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004), *superseded in part on other grounds by* TEX. R. APP. P. 21.8(b), *as recognized in State v. Herndon*, 215 S.W.3d 901, 905 n.5 (Tex. Crim. App. 2007). In determining whether the trial court abused its discretion, we do not determine whether the facts present an appropriate case for the trial court's action; we instead determine whether the trial court acted without reference to any guiding principles or in an arbitrary or unreasonable manner. *See id.* We view the evidence in the light most favorable to the trial court's ruling, and defer to its credibility determinations. *Id.* Because we presume that the trial court implicitly made all reasonable factual findings that could have been made in support of its ruling, we will conclude that the trial court abused its discretion only if no reasonable view of the record could support its ruling. *Id.* This remains true even if we would have decided the issue differently. *Herndon*, 215 S.W.3d at 907–08.

## A.     Failure to Present Sotomayor's Testimony

In his first two issues, appellant argues that the trial court erred in overruling his motion for new trial because his defense attorneys were aware before trial of Sotomayor's existence and the testimony that he could offer, but took no steps to secure his presence or to preserve his testimony via a videotaped deposition. *See* TEX. CODE CRIM. PROC. ANN. art. 39.02 (West Supp. 2011) (governing depositions of witnesses in criminal trials). As

8

the following summary shows, however, the record does not affirmatively show that defense counsel's conduct fell outside the broad range of prevailing professional norms.

On the second day of trial, defense attorney Alfred Valdez represented to the trial court that Sotomayor was hospitalized in El Paso, and that although Valdez had intended to have someone fly to El Paso and escort Sotomayor to Houston to testify that day, Sotomayor had represented that he was unable to travel. Valdez further stated that he was trying to arrange to have a court reporter administer an oath to Sotomayer the next morning and have Sotomayor testify by telephone. Valdez explained that he had a copy of an affidavit in which Sotomayor stated that K.H. was intoxicated on July 10, 2008, and that he, Sotomayor, had gone upstairs behind K.H. and appellant and observed that appellant did not enter K.H.'s room. To explain why arrangements for Sotomayor's testimony had not been made earlier, Valdez stated, "We were trying to track him down, and he kind of dropped out of sight on us." The State objected that Sotomayor's testimony duplicated the testimony of other witnesses who had been or would be called, and the trial court stated that it would rule after it heard the other testimony.

After appellant's remaining witnesses finished testifying, Valdez asked the trial court on the fourth day of trial to rule as to whether Sotomayor would be allowed to testify by telephone. Valdez stated, "[W]e have been attempting to . . . get [Sotomayor] here . . . . But we tried to locate him, and we have found him, but he's not allowed to travel." In denying the request, the trial court stated, "I have no subpoena in here indicating that he was served with a subpoena to be here. I have no proof that he's medically incapacitated."

Although appellant moved for a new trial asserting that he was denied effective assistance of counsel by his trial attorneys' failure to offer Sotomayor's evidence through live testimony or deposition,[3] the evidence in support of the motion was both conflicting

---

[3] In arguing that appellant's trial counsel should have moved for leave to allow Sotomayor to testify live via a video link, appellant has assumed that such a procedure would be governed by the same

9

and incomplete. Appellant produced his own affidavit and that of a paralegal, Rene Alexander, whom he had asked to assist with his defense.[4] Appellant attested that he gave Jones and Valdez originals or copies of Sotomayor's statement in July 2008, and Alexander testified that appellant gave defense counsel the statement at a time when she was no longer associated with the case. Alexander also opined that lead counsel Lisa Jones must not have looked for Sotomayor, because Alexander was able to find him within a few days of the date on which she began looking. Alexander does not mention any efforts by Valdez to locate Sotomayor, and Valdez's own statements to the trial court were contradictory. As discussed above, Valdez initially represented to the trial court that the defense had been looking for Sotomayor and had been unable to locate him; however, he also filed an affidavit in which he stated that according to his best recollection, he was not aware of Sotomayor until Alexander told Valdez about him on October 22, 2010—the last business day before trial. The trial court also had before it the affidavit of lead defense attorney Lisa Jones, who swore that she had no knowledge of Sotomayor until October 22, 2010, when Valdez forwarded her a copy of Sotomayor's statement. Jones attached to her affidavit an email string showing that Alexander sent Sotomayor's statement to Valdez at 3:14 p.m. on Friday, October 22, 2010, and Valdez sent a reply to Alexander (with a courtesy copy to Jones) at 9:47 p.m. that night.

Because we must presume that the trial court made all factual findings and credibility determinations in a manner that supports its ruling, *see Charles*, 146 S.W.3d at

---

rule that governs depositions of witnesses. We will assume for the purposes of this discussion that this is correct. A criminal defendant may take a deposition upon a showing of "good reason" for doing so. TEX. CODE CRIM. PROC. ANN. art. 39.02 (West Supp. 2011). The trial judge has broad discretion in deciding whether to order a deposition. *May v. State*, 738 S.W.2d 261, 273 (Tex. Crim. App. 1987); *James v. State*, 563 S.W.2d 599, 602 (Tex. Crim. App. 1978). Such depositions may be appropriate if the witness has information critical to a significant factor at trial, or if the witness has exclusive possession of certain information. *Janecka v. State*, 937 S.W.2d 456, 469–70 (Tex. Crim. App. 1996) (per curiam); *Morrow v. State*, 139 S.W.3d 736, 743 (Tex. App.—Texarkana 2004, no pet.). But, "[a] deposition under Article 39.02 is of such an extraordinary nature that little jurisprudence exists to govern its application." *Janecka*, 937 S.W.2d at 468.

[4] Alexander was not employed by Jones or Valdez.

208, we presume the trial court found that appellant's defense team did not subpoena Sotomayor or seek to depose him prior to trial because until October 22, 2010, they were unaware of his location[5] and of his ability to testify that (1) the intoxicated woman in the hotel lobby on July 10, 2008 was K.H., and (2) he followed appellant upstairs on two occasions that night and saw that appellant did not enter K.H.'s room.

It is true that after learning these facts, defense counsel did not file an application for leave to depose Sotomayor. Nevertheless, we cannot agree that the failure to do so fell outside the broad range of prevailing professional norms.

An application to depose a witness in a criminal case must be supported by an affidavit. *See* TEX. CODE CRIM. PROC. ANN. art. 39.02. The deposition is admissible in a criminal trial "[w]hen oath is made by the party using the deposition . . . that by reason of age or bodily infirmity, that witness cannot attend . . . . When sought to be used by the defendant, the oath must be made by the defendant in person." *Id.* art. 39.01. Although "little jurisprudence exists to govern" the application of this provision,[6] some courts have held that if an application or motion to depose a witness is unsupported by an affidavit affirmatively showing that the affiant has personal knowledge of the facts, "the trial court has no discretion and must deny the motion." *State ex rel. Simmons v. Moore*, 774 S.W.2d 711, 714–15 (Tex. App.—El Paso 1989, no pet.); *accord*, *Gonzales v. State*, 822 S.W.2d 189, 193–94 (Tex. App.—San Antonio 1991), *pet. granted and remanded*, 831 S.W.2d 326 (Tex. Crim. App. 1992). And, as the trial court pointed out on the record, there was no proof that Sotomayor was medically incapable of travel. Every member of appellant's defense team later attested that Sotomayor told them his doctor would not allow him to travel, but there is no affidavit from Sotomayor or his physician to that effect. Indeed, there is no evidence that anyone with personal knowledge of Sotomayor's condition was

---

[5] *See* TEX. CODE CRIM. PROC. ANN. art. 24.03(a) (West 2009) (an application for a subpoena must state the desired witness's location).

[6] *Janecka*, 937 S.W.2d at 468.

11

willing to swear that he was medically unable to travel. The trial court accordingly would not have abused its discretion in denying a request to depose Sotomayor or to allow him to testify via video link.[7]

An application for deposition also must be filed in a timely fashion. In *Langston v. State*, for example, the Court of Criminal Appeals held that the trial court did not abuse its discretion in denying an application filed on the Friday before a Monday trial setting because the indictment had been pending for almost a year, the defendant's attorney was appointed two months before trial, and the trial was passed on two prior occasions. 416 S.W.2d 821, 822 (Tex. Crim. App. 1967). Here, the indictment had been pending for just three days less than a year, appellant had been represented by his two retained attorneys for more than four months, the trial was repeatedly set and rescheduled; and the trial court previously continued the case at appellant's request. *See also Aguilar v. State*, 468 S.W.2d 75, 78–79 (Tex. Crim. App. 1971) (finding no abuse of discretion in trial court's denial of application for deposition filed two days after defendant announced "ready" for trial); *Jasso v. State*, 699 S.W.2d 658, 663 (Tex. App.—San Antonio 1985, no pet.) (finding no abuse of discretion in denying an application for deposition filed four days before trial, because "[s]uch request for relief comes too late"). For this reason, too, the trial court would not have abused its discretion in denying such a motion.

Under all these circumstances, we cannot conclude that defense counsel's conduct in failing to procure Sotomayor's testimony before or during trial fell below prevailing professional norms. We accordingly overrule appellant's first two issues.

---

[7] Although the Code of Criminal Procedure does provide that there are circumstances in which a witness who is unable to travel can be deposed, appellant has cited no similar authority providing for such a witness to testify live from another location via a video link. And as the Court of Criminal Appeals has stated, "An ineffective assistance of counsel claim cannot be based on an alleged error of counsel when the caselaw evaluating counsel's actions and decisions in that instance was nonexistent or not definitive." *Vaughn v. State*, 931 S.W.2d 564, 568 (Tex. Crim. App. 1996) (per curiam).

**B.     Failure to Move for Continuance**

In his third and fourth issues, appellant argues that even if his trial attorneys did not locate Sotomayor until October 22, 2010, they rendered ineffective assistance by failing to move for a continuance to secure his attendance or deposition.   In her affidavit in response to appellant's motion for new trial, Jones stated that she did not move for a continuance because she did not think it would be granted.   Because there is no evidence that appellant's trial counsel could have met the statutory requirements governing such motions, we cannot conclude that, in making this decision, Jones's representation fell outside the bounds of prevailing professional norms.

A defendant who files a first motion for a continuance based on a witness's absence must identify the witness and the material facts he expects the witness to prove.   TEX. CODE CRIM. PROC. art. 29.06 (West 2006).   In addition, the defendant must show that (1) he exercised diligence to procure the witness's attendance, (2) he has neither procured nor consented to the witness's absence, (3) the motion is not made for delay, and (4) there is no reasonable expectation that attendance of the witness can be secured during the present term of court by postponing the trial to a later day in the same term.   *Id.*; *Harrison v. State*, 187 S.W.3d 429, 434 (Tex. Crim. App. 2005).   If the defendant files a subsequent motion for a continuance based on a witness's absence, then the defendant additionally must show that he reasonably expects to procure the witness's testimony "at the next term of the court," and "the testimony cannot be procured from any other source known to the defendant."   TEX. CODE CRIM. PROC. art. 29.07 (West 2006).   The trial court may grant a continuance even after trial has begun "when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had."   *Id.* art. 29.13.   Moreover, "[a]ll motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance."   *Id.* art. 29.08.

13

As previously discussed, there is no evidence that anyone with personal knowledge of Sotomayor's condition was willing to swear that he was medically unable to travel to Houston to testify at the October 25th trial setting. Moreover, defense counsel already had successfully continued the trial once to bring two witnesses from Canada. To move for a second continuance, appellant's trial attorneys would be required to show that they reasonably expected to procure Sotomayor's testimony at the next term of court.[8] Because there is no evidence that defense counsel could have made such a showing, we cannot say that defense counsel rendered ineffective assistance by failing to move for a further continuance. *Cf. Nwosoucha v. State*, 325 S.W.3d 816, 828 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (concluding that trial court did not abuse its discretion in denying a motion for continuance filed on the date of trial where the case previously had been continued and "out-of-county physicians, federal prisoners, and numerous persons over sixty-five, had been subpoenaed and were ready to testify"). We therefore overrule appellant's third and fourth issues.

## IV. EXCLUSION OF EVIDENCE

In his final issue, appellant contends that the trial court reversibly erred in excluding certain testimony by Ron Hansard about appellant's health and physical condition. We review a trial court's admission or exclusion of evidence for an abuse of discretion. *Campos v. State*, 256 S.W.3d 757, 761 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (citing *Torres v. State,* 71 S.W.3d 758, 760 (Tex. Crim. App. 2002)). A trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Id.* (citing *Montgomery v. State,* 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). A trial court does not abuse its discretion, and we will not reverse a

---

[8] The record shows that on July 22, 2010, the trial court set this case to be tried on October 22, 2010. Jones had moved for a continuance on October 8, 2010 to subpoena unspecified witnesses from Canada. The trial court granted the motion on October 19, 2010. The case was continued over the weekend, and the trial began on October 25, 2010.

14

trial court's ruling, unless the ruling falls outside the zone of reasonable disagreement. *Id.* (citing *Torres*, 71 S.W.3d at 760).

The record shows that Hansard initially attempted to testify regarding appellant's health as follows:

Q.    Did you know anything about Mr. Frangias'[s] health at that time?

A.    He had been having some health problems for quite a while. And I was always getting on to him about go ahead and get your problems taken care of here. And he couldn't even -- how do I say it, he couldn't even go to the bathroom, you know.

Q.    What do you mean by that?

THE STATE:    Objection, this is going to be hearsay, Your Honor.

THE COURT:    That will be sustained.

Q.    So, you said he couldn't even go to the bathroom?

THE STATE:    Objection.

DEFENSE:    I'm repeating what he said.

THE STATE:    And [the trial court] sustained the objection that that was hearsay.

Q.:    How did he appear to you healthwise?

THE STATE:    Objection, Your Honor, relevance.

THE COURT:    That will be sustained.

Q.:    Did you ever see Mr. Frangias have difficulty doing any tasks?

THE STATE:    Objection, Your Honor, relevance.

THE COURT:    That will be sustained.

Defense counsel made an offer of proof of the excluded testimony. Thus, the record shows that Hansard would have testified that (1) while he was staying at the hotel,

he saw appellant frequently during the day, and appellant spoke with him in his room three to five nights each week; (2) he became aware that appellant had health issues; (3) appellant had difficulty urinating; (4) appellant had gastric problems; (5) appellant's health started to deteriorate before July 2008; (6) at times, appellant appeared yellowish, as though he were jaundiced; (7) appellant had less strength in July 2008 than in previous months, and on some days, appellant "would just sit there"; (8) appellant frequently had to go to his room to rest, and (9) Hansard did not believe that appellant had a lot of strength or could lift heavy objects. When asked why appellant had problems urinating, Hansard stated, "I'm not real sure. I figured that he had some kind of prostate. I don't know first hand what his problem was. John had some gastral [sic] problems that were bad." The State objected that Hansard's testimony was hearsay in that it had to be based on appellant's statements as to how he was feeling. In excluding the testimony, the trial court observed that Hansard is not a medical doctor.

We conclude that the exclusion of this testimony did not result in reversible error. There was no evidence that Hansard had first-hand knowledge of appellant's gastric problems or difficulty urinating; thus, trial court did not abuse its discretion in sustaining the hearsay objection. *See* TEX. R. EVID. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Although some of the proffered testimony was not hearsay but instead consisted of Hansard's observations and the inferences he drew from those observations,[9] even that testimony was cumulative. Not only did appellant and his wife testify as to appellant's medical history, his medical records were in evidence. Moreover, witness Mindy Colson is a registered nurse, and she testified about appellant's appearance on the night of the charged offense. Thus, the excluded testimony would have added

---

[9] *See* TEX. R. EVID. 701 (a lay witness may give opinion testimony if that testimony is both rationally based on the witness's perceptions and helpful to the factfinder in understanding the witness's testimony or in determining a fact in issue).

16

nothing to the evidence that was admitted.  We accordingly overrule appellant's fifth issue.

## V.  CONCLUSION

Because the record does not affirmatively show that appellant's trial counsel rendered ineffective assistance, the trial court did not abuse its discretion in allowing appellant's motion for new trial to be overruled by operation of law.   We further conclude that the trial court did not abuse its discretion in excluding Hansard's testimony regarding appellant's apparent health.   We therefore affirm the trial court's judgment.


/s/      Tracy Christopher
Justice


Panel consists of Chief Justice Hedges and Justices Brown and Christopher.

Publish — TEX. R. APP. P. 47.2(b).