**Affirmed and Memorandum Opinion filed November 20, 2014.**



**In The**

# Fourteenth Court of Appeals

---

## NO. 14-13-00407-CR

---

**QUINTEN McINTYRE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 339th District Court
Harris County, Texas
Trial Court Cause No. 1339592**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted Quinten McIntyre of felony murder[1] and assessed his punishment at 46 years' imprisonment and a $10,000 fine. Appellant challenges his conviction and sentence on grounds that (1) the evidence is legally insufficient to prove that he committed the offense; (2) the trial court erred by refusing to issue appellant's proposed accomplice witness jury instruction; (3) the trial court erred

---

[1] *See* Tex. Penal Code Ann. § 19.02(b)(3) (Vernon 2011).

by overruling appellant's objections to Harris County Assistant District Attorney Jane Waters' testimony; and (4) the trial court erred by refusing to order a mistrial based on improper jury argument at the punishment phase of trial. We affirm.

## BACKGROUND

Deandre Elliot was killed on the night of November 19, 2009. Elliot's girlfriend, Kennetra Parker, testified that Elliot picked her up from her apartment for a date that night. Elliot drove his bluish-green Buick, which had custom tire rims. Elliot and Parker returned to Parker's apartment after the date, and Elliot departed around midnight. Parker closed her front door after Elliot's departure, and took four or five steps towards her bedroom. She then heard gunshots. Next, she heard multiple people running, and then, someone banging on her front door. She opened her door, and saw Elliot leaning on it. She also saw her neighbor, Jacobe White, standing in the breezeway. Parker closed her door and then reopened it. Elliot fell forward onto the floor. He was alive, but unable to speak. He died soon after from multiple bullet wounds to his chest, mouth, and back, from bullets fired by a .38 caliber gun.

Lynn Ireland was a resident of the apartment complex where Parker lived. Ireland testified that she was walking back to her apartment around 11:45 p.m. on the night Elliot died. She approached the complex from the street and had a clear view of the breezeway in front of Parker's apartment. She heard a gunshot as she walked toward the complex, and saw a flame from a gun fired at the edge of the breezeway. She walked closer, and saw and heard three more shots fired. She then saw a man backing out of the breezeway as if he were shooting. The man exited the breezeway and ran toward the back passenger's side of a bluish-green Buick, which was parked in the apartment complex parking lot. Ireland testified that she did not get a good look at the man who entered the Buick, or at the driver

2

of the Buick.  The Buick then backed out of its parking space and sped off.

Houston Police Officer Peter Vu testified that he was dispatched to investigate a suspicious vehicle on the day after Elliot died.  He discovered Elliot's Buick, with rims on its tires, after arriving at the dispatch location.  Houston Police Officer Ramon Cervantes testified that he knew the location where Elliot's Buick was found to be on the street directly behind appellant's home.

Appellant was charged with capital murder;[2] the indictment alleged that appellant intentionally caused the death of Elliot "while in the course of committing and attempting to commit" the robbery of Elliot.  The jury convicted appellant of the lesser included offense of felony murder and assessed his punishment at 46 years' imprisonment and a $10,000 fine.  Appellant timely appealed.

**ANALYSIS**

## I.    Sufficiency of the Evidence

Appellant argues in his first issue that the evidence is insufficient to support his conviction because the State did not prove beyond a reasonable doubt that he was involved in robbing and killing Elliot.

Due process requires the State to prove beyond a reasonable doubt every element of the crime charged.  *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) ("The *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt.").  When reviewing the sufficiency of the evidence, we view all

---

[2] *See* Tex. Penal Code Ann. § 19.03 (Vernon Supp. 2014).

3

the evidence in the light most favorable to the verdict to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319; *Brooks,* 323 S.W.3d at 899. This standard, "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *Laster v. State*, 275 S.W.3d 512, 522 (Tex. Crim. App. 2009).

The jury is the sole judge of the credibility and weight to be attached to a witness' testimony. *Jackson*, 443 U.S. at 319; *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We permit juries to draw multiple reasonable inferences from facts as long as each is supported by the evidence presented at trial. *See Temple*, 390 S.W.3d at 360. When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination. *See Jackson*, 443 U.S. at 326; *Temple*, 390 S.W.3d at 360. "Our role on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally." *Laster*, 275 S.W.3d at 517. "When conducting a legal sufficiency review, a court must ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' — not whether '*it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (citing *Jackson*, 443 U.S. at 318-19) (emphasis in the original).

We assess both direct and circumstantial evidence under the same standard. *Id*. at 517-18. Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone is sufficient to establish guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). In circumstantial evidence cases, it is not necessary that every fact and circumstance

4

point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances." *Temple*, 390 S.W.3d at 359.

A person commits the offense of felony murder if the person commits or attempts to commit a felony, other than manslaughter, and in the course of its commission, he commits an act clearly dangerous to human life that causes the death of an individual. Tex. Penal Code Ann. § 19.02(b)(3) (Vernon 2011). A person commits the second degree felony offense of robbery if, in the course of committing theft and with intent to obtain or maintain control of property, the person intentionally, knowingly, or recklessly (1) causes bodily injury to another; or (2) threatens or places another in fear of imminent bodily injury or death. *See id.* § 29.02(a) (Vernon 2011). A person commits the offense of theft if the person appropriates property without the owner's consent and with intent to deprive the owner of property. *See id.* § 31.03(a), (b)(1) (Vernon Supp. 2014).

Appellant argues that the jury's verdict was not based on a rational review of the evidence. He argues that a rational factfinder must have had reasonable doubt that appellant was involved with the robbery and killing of Elliot because there is no evidence or, at most, a mere scintilla of reliable evidence linking appellant to the crime. *See Laster*, 275 S.W.3d at 518 ("[W]e will uphold the verdict unless a rational factfinder must have had reasonable doubt as to any essential element."); *Brooks*, 323 S.W.3d 916 (Cochran, J. concurring) ("A reasonable doubt might arise because the verdict is manifestly against the great weight and preponderance of the credible evidence or because there is nothing more than a mere scintilla of evidence to support some element of the offense."). Appellant acknowledges the jury's role in determining the credibility of witnesses and the weight to be given to their testimony; however, he argues that this is a rare case in which the jury's

credibility determinations must be limited.

We begin our analysis by summarizing testimony from the State's witnesses directly linking appellant to the robbery and murder of Elliot. We then discuss appellant's challenges to the credibility of this testimony.

## A.    The State's Witnesses

The State called Joshua Mouton at trial. Mouton testified that, a few days before Elliot died, he gave appellant a working .38 caliber pistol in exchange for two guns that appellant offered.

The State called appellant's close friend Darryl Obey. Obey testified that appellant came to his house alone around 1:00 a.m. on the night Elliot died. According to Obey, appellant asked him to open his garage because appellant had a set of tire rims he wished to remove from a car. Obey identified the car at trial as Elliot's Buick. Obey opened his garage, and, as he was preparing to help appellant, he learned that Elliot had been killed. Obey accused appellant of killing Elliot for his Buick. Appellant responded that he did not know that Elliot had been killed. Appellant then stated that Parker's neighbor, Jacobe White, set up the robbery; that, during the robbery, Elliot hit appellant; and that, as he fell to the ground, appellant pulled out a gun and shot Elliot. Appellant showed Obey a .38 caliber pistol. Appellant left in Elliot's Buick.

Obey testified that appellant returned to his house around 9:00 a.m. the next day. Kenny Hill was also at Obey's house to sell Obey marijuana. According to Obey, appellant approached Hill after Obey completed his marijuana purchase. Obey observed Hill buy a gun from appellant in exchange for cash and marijuana.

Obey testified that he and appellant drove to the auto parts stores Auto Zone and O'Reilly after the drug and gun transactions; Obey denied that they also went

6

to Pep Boys.  According to Obey, he and appellant attempted to purchase a tool to remove the tire rims from Elliot's Buick.  Obey stated that they were unsuccessful.  Obey then dropped appellant off at the apartment complex where Elliot died.

Obey testified that, on the following day, Hill returned to Obey's home upset about purchasing the gun from appellant.  Hill then left with the gun.  Obey stated that he never saw the gun again. Obey acknowledged that he had not been completely forthcoming about the gun.

The State called Hill.  Hill testified that sometime in November 2009, Obey contacted him regarding a gun that was for sale.  Hill went to Obey's house, where he met Obey and another man.  Hill testified that the other man was "probably seventeen [or] eighteen" and "kind of slim."  Hill testified that the other man had "low cut" hair; Hill did not describe the man's height.  Hill sold Obey marijuana, and then purchased a gun from the other man for approximately $50.  Hill testified that Obey was present during the gun transaction; all three individuals sat in Hill's truck during the transaction.  Hill stated that he returned to Obey's home after learning of Elliot's death a day or two later.  He met Obey, and told him that he did not want the gun.  Hill left the gun on Obey's front porch.

The State called Jacobe White's sister, TaShell White.  TaShell lived with her brother at the apartment complex where Elliot died.  TaShell testified that she saw appellant at the apartment complex at approximately 3:00 p.m. or 4:00 p.m. and again at approximately 9:00 p.m. on the day Elliot died.  TaShell also testified that appellant came to her apartment the morning after Elliot died.  According to TaShell, appellant spoke with her brother outside their apartment.  The apartment door was partially open, and TaShell overheard part of the conversation.  TaShell overheard appellant tell her brother, "Man, I didn't mean to shoot him."  She also overheard appellant tell her brother that he only wanted to take Elliot's Buick for

7

its rims.

**B.      Appellant's Attempted Impeachment of the State's Witnesses**

Appellant attempted to impeach Mouton, Obey, and TaShell at trial.

Mouton acknowledged that in 2010 he was charged with second degree felony possession of a controlled substance.  He testified that, after he spoke with investigators about Elliot's death, he received a plea deal in which he pled guilty to a state jail felony and was sentenced to five days' imprisonment in the Harris County Jail.  Mouton denied receiving the deal in exchange for testifying in this case.

Obey testified that he was charged with the felony of aggravated assault of a family member.  He testified that, after he spoke with Houston police officers, the felony charge against him was dropped and he pled guilty to a misdemeanor deadly conduct charge.  Obey denied that he received the plea deal in exchange for testifying in this case.

TaShell testified that she did not tell Houston police investigators about the conversation she overheard between appellant and her brother until nearly two years after Elliot's death.  She testified that she told investigators about the conversation to "keep [her] brother out of trouble" because investigators were asking her about Jacobe's involvement in Elliot's death.  TaShell testified that her brother did not receive any benefit in exchange for her testimony in this case.

**C.      Purported Inconsistencies in Witness Testimony**

Appellant asserts that there are inconsistencies in the testimony proffered at trial.

Mouton testified at trial that he did not know appellant.  He then recanted this statement and testified that he sold a .38 caliber gun to appellant.

8

Obey and Hill both described the same gun and drug transaction; however, their accounts differ. Both men testified that the gun transaction occurred inside Hill's truck. Obey testified that he observed the gun transaction standing outside of Hill's truck; Hill testified that Obey was present in the truck, along with the man who sold him the gun. Obey stated that appellant initiated the gun sale by approaching Hill; Hill stated that Obey contacted him by phone and asked him if he was interested in buying a gun.

Appellant called Pep Boys' employee Steven Bradford as a witness. Bradford testified that two men came to the Pep Boys' store that he worked at the day after Elliot died. According to Bradford, the two men were looking for a tool to remove tire rims. Both men wore hooded sweatshirts. Bradford identified one man as Obey. Obey denied visiting Pep Boys the day after Elliot died.

Additionally, appellant asserts that the witnesses' descriptions of key individuals differ. Appellant also asserts that the "impartial witnesses" cannot identify appellant. According to appellant, these two failings create reasonable doubt that appellant was connected to the robbing and killing of appellant. Ireland described the man he saw running into the backseat of Elliot's Buick on the night of the killing as "dark-skinned," "pretty short," of a "stocky build," and with a "taper crew cut." Hill identified the man he purchased a gun from as "probably seventeen [or] eighteen" and "kind of slim." Hill could not identify appellant at trial. Bradford described the man who came to Pep Boys with Obey as 18 to 22 years old, "skinny," and about six foot, one inch tall. Bradford did not identify appellant in December 2009 when police presented him with a photo line-up of six African-American men, including appellant. Obey described himself as five foot, ten inches tall, 25 years old, and about 250 pounds in November 2009. Houston Police Officer Cervantes described appellant as approximately five foot, six inches

9

or five foot, seven inches tall, "thin-built," and approximately 160 or 165 pounds, with "very low cut" hair in November 2009. Appellant was 19 years old in November 2009.

## D. Discussion

Appellant argues that the testimony of Mouton, Obey, and TaShell, linking appellant to the robbery and killing of Elliot, is not reliable and cannot establish his guilt beyond a reasonable doubt. Appellant argues that his credibility attacks on these witnesses, along with inconsistencies between these and other witnesses' testimony and descriptions, mean that the evidence cannot support his conviction.

We reject appellant's contention. As an initial matter, appellant's credibility attacks cannot support reversal because we do not re-evaluate the jury's credibility determinations on appeal. Jurors are the exclusive judges of the credibility of the witnesses and of the strength of the evidence. *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999); *Green v. State*, 350 S.W.3d 617, 621 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *cf. United States v. Abel*, 469 U.S. 45, 52 (1984) (the jury determines bias). The jury is free to believe or disbelieve all or a part of a witness' testimony. *Jones v. State*, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998); *Green*, 350 S.W.3d at 621. Our role is not to become a thirteenth juror, and we may not re-evaluate the weight and credibility of the record evidence and thereby substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The jury, acting within its prerogative, could have resolved all credibility issue in favor of Mouton, Obey, and TaShell. *See id.*; *cf. Brooks*, 323 S.W.3d at 906-07 (it is within a jury's prerogative to believe a convenience store clerk and disregard contradicting, properly authenticated video footage, although a jury's finding of guilt on the basis of the clerk's testimony would not be rational).

10

In a sufficiency review, we view all evidence in the light most favorable to the verdict and determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Williams*, 235 S.W.3d at 750. In doing so, we give deference to the responsibility of the factfinder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's resolution unless the resolution is not rational. *See id.*

In this case, we cannot say that the jury's resolution was irrational. Obey and TaShell testified that appellant admitted to robbing and shooting Elliot. Mouton testified that he sold a .38 caliber gun to appellant before Elliot died. Hill testified that he purchased a gun from Obey's acquaintance after the killing, and Obey testified that this acquaintance was appellant. Elliot's Buick was discovered on the street behind appellant's home after the killing, and TaShell testified that she saw appellant at the apartment complex on the night of the killing. This is not a case in which the evidence of appellant's guilt is speculative, nor is it a case in which conclusive, properly authenticated evidence disproves appellant's guilt; appellant's conviction is based on witness testimony, which the jury determined to be credible. *See Brooks*, 323 S.W.3d at 906-07; *Johnson v. State*, 419 S.W.3d 665, 671 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (complainant's testimony sufficient to support defendant's conviction for aggravated sexual assault of a child where complainant's testimony conflicted with defendant's testimony and where complainant's acquaintance denied her honesty); *but see Stobaugh v. State*, 421 S.W.3d 787, 790 (Tex. App.—Fort Worth 2014, pet. filed) (evidence is insufficient to support a finding of the elements of murder beyond a reasonable doubt where "there is no body, no murder weapon, no witnesses, and no blood or DNA

11

evidence; there are no fibers or hairs or any type of forensic evidence establishing that a murder occurred or linking [the defendant] to a murder; and there is no confession or directly incriminatory statement by [the defendant].").  We overrule appellant's first issue.

## II.   Charge Error

Appellant contends in his second issue that the trial court erred in refusing his proposed accomplice witness jury instruction.  Appellant argues that a fact issue exists as to whether Obey was an accomplice to the charged offense of capital murder because Obey's testimony established that he helped appellant sell Elliot's stolen tire rims and appellant's gun.  The State argues that Obey was not an accomplice because Obey helped appellant only after Elliot's murder was completed, and because Obey did not possess the required culpable mental state for capital murder.

A defendant has a right to an instruction on any defensive issue raised by the evidence.  *Cocke v. State*, 201 S.W.3d 744, 747 (Tex. Crim. App. 2006).  A conviction cannot be secured upon the testimony of an accomplice unless that testimony is corroborated by other evidence tending to connect the defendant to the offense.  Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005); *Cocke*, 201 S.W.3d at 747.  Unless the evidence clearly shows that a witness is an accomplice as a matter of law, a question about whether a particular witness is an accomplice is properly left to the jury with an instruction defining the term "accomplice." *Cocke*, 201 S.W.3d at 747-48.  If the evidence is unclear, the jury must first determine whether the witness is an accomplice as a matter of fact before considering whether corroborating evidence is required and has been produced.  *Id.* at 748.  However, the trial court is not required to give the jury an accomplice-witness instruction when the evidence is clear that the witness is neither an

accomplice as a matter of law nor as a matter of fact. *Id.*

An accomplice is an individual who participates with a defendant before, during, or after the commission of the crime and acts with the required culpable mental state. *Id.* Participation requires an affirmative act that promotes the commission of the offense with which the defendant is charged. *Id.* An individual is an accomplice if he or she could be prosecuted for the offense or a lesser-included offense. *Id.*

Appellant argues that Obey was an accomplice to the alleged capital murder of Elliot because he assisted with the robbery of Elliot's car. Obey allegedly assisted with the robbery of Elliot's car by helping dispose of the gun used in the robbery and the tire rims.

On this record, Obey was not an accomplice to Elliot's murder. Robbery is an element of capital murder, as charged in this case. *See* Tex. Penal Code Ann. § 19.03(a)(2) (Vernon Supp. 2014); *id.* § 19.02(b)(3). Robbery requires that a person commit a theft, which in turn requires that a person appropriate the property of another without the owner's consent and with the intent to deprive the owner of the property. *See* Tex. Penal Code Ann. § 29.02; Tex. Penal Code Ann. § 31.03(a), (b)(1). Once each element of a theft has occurred, it is completed; theft is not a continuing offense. *Barnes v. State,* 824 S.W.2d 560, 562 (Tex. Crim. App. 1991), *overruled on other grounds by Proctor v. State*, 967 S.W.2d 840, 842 (Tex. Crim. App. 1998); *Terry v. State*, 397 S.W.3d 823, 830 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

In this case, appellant completed the alleged theft by appropriating Elliot's Buick with intent to deprive Elliot of the Buick. *See Barnes*, 824 S.W.3d at 830. Any assistance from Obey came after the Buick was stolen. Therefore, he was not an accomplice to appellant in the theft; in turn, he was not an accomplice in the

13

robbery and murder of Elliot connected with the theft. *See id.*; *see also Lee v. State*, No. 14-03-00458-CR, 2004 WL 1206019, at *2 (Tex. App.—Houston [14th Dist.] June 3, 2004, no pet.) (mem. op., not designated for publication) (individual who received a stolen car was not an accomplice to capital murder committed in connection with the robbery of the car).

Additionally, to the extent the evidence shows Obey tried to conceal the murder by assisting in the disposal of Elliot's Buick and the gun, his assistance does not make him an accomplice to murder. To be an accomplice to murder, an individual must "be susceptible to prosecution for the murder itself by having affirmatively assisted in committing the offense." *Druery v. State*, 225 S.W.3d 491, 500 (Tex. Crim. App. 2007). The record does not show that Obey affirmatively assisted in committing the murder; therefore, Obey is not an accomplice to murder. *See id.* (individual who only assisted in disposing of the murder weapon was not an accomplice to murder); *Paredes v. State*, 129 S.W.3d 530, 537 (Tex. Crim. App. 2004) (individual who only participated in disposing of bodies was not an accomplice to murder).

Finally, nothing in the record indicates that Obey acted with the required culpable mental state for capital murder or felony murder; therefore, he could not be an accomplice to those crimes. *See Cocke*, 201 S.W.3d at 747 (an accomplice must act with the required culpable mental state); *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993) (Capital murder requires the existence of an "intentional cause of death;" felony murder in connection with a robbery requires an "intent to rob the victim, but not cause his death").

We conclude that the evidence adduced at trial does not raise the possibility that Obey may have been an accomplice to capital or felony murder; therefore, the trial court correctly denied appellant's requested accomplice-witness jury

14

instruction. *See Cocke*, 201 S.W.3d at 747. We overrule appellant's second issue.

## III. Rehabilitation Testimony

Appellant contends in his third issue that the trial court erred in denying his objections to the testimony of Harris County Assistant District Attorney Jane Waters. She testified that the district attorney's office did not offer Obey a plea deal in exchange for his testimony in this case. Appellant objected on grounds that Waters' testimony was irrelevant, was hearsay, and violated his Sixth Amendment right to be confronted with the witness against him. We address each objection in turn.

### A. Background

Obey testified on direct examination that he did not receive a plea bargain in exchange for his testimony in this case. On cross-examination, Obey admitted that he was charged in March 2010 with the second degree felony of aggravated assault on a family member, which is punishable by not less than two years' or more than 20 years' imprisonment. *See* Tex. Penal Code Ann. § 12.33 (Vernon 2011). Obey's aggravated assault charge was enhanced by a prior aggravated robbery, which raised the offense to a first degree felony punishable by not less than five years' or more than 99 years' imprisonment. *See id.* § 12.42(b) (Vernon Supp. 2014); *id.* § 12.32 (Vernon 2011). Obey testified that the district attorney's office offered him a plea bargain in December 2010. Pursuant to the plea bargain, the district attorney's office dropped the aggravated assault charge and Obey pled guilty to misdemeanor deadly conduct. *See id.* § 22.05 (Vernon 2011). Obey served 121 days' confinement in the Harris County Jail.

The State called Waters to rehabilitate Obey's credibility. Appellant examined Waters on voir dire outside of the presence of the jury. Waters testified

that she was the head of the district attorney's office domestic violence division in 2010, and that she supervised the prosecutor directly responsible for Obey's aggravated assault prosecution. Waters stated that, as head of the domestic violence division, she would have had to approve any plea deal that her division made with a witness in exchange for testimony. Waters stated that she did not approve a plea deal for Obey in exchange for testimony. Waters further stated that she reviewed Obey's aggravated assault case file and nothing in the case file indicated to her that Obey was offered a plea deal in exchange for testimony in appellant's case.

Appellant objected to Waters' proposed testimony on relevance and hearsay grounds because Waters was not the prosecutor directly responsible for Obey's aggravated assault case. Appellant also objected on grounds that Waters' testimony violated his Sixth Amendment right to confront a witness against him — specifically, the prosecutor directly assigned to Obey's case. The trial court denied appellant's objections outside the presence of the jury.

The jury returned, and Waters testified that she did not approve a deal to reduce Obey's aggravated assault charge in exchange for his testimony in this case. She further testified that nothing in Obey's case file indicated that a deal with Obey had been reached in exchanged for his testimony in this case. Waters testified that Obey's case file contained an email from the prosecutor in charge of appellant's murder case to the prosecutor in charge of Obey's aggravated assault case. According to Waters, the email stated that Obey was a witness in the murder case. Waters testified that Obey's case file also contained a note written by the prosecutor directly responsible for Obey's aggravated assault prosecution. According to Waters, the note stated that the prosecutor in charge of appellant's murder case wished to be "kept in the loop" on Obey's case. Waters stated that,

based on her recollection and review of the case file, Obey's plea deal occurred after the aggravated assault complainant recanted her testimony.[3]

## B. Standard of Review

Appellant's evidentiary and constitutional objections are governed by different standards of review. *See Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006); *Infante v. State*, 404 S.W.3d 656, 662 (Tex. App.—Houston [1st Dist.] 2012, no pet.). We review appellant's relevancy and hearsay challenges to the trial court's admission of evidence under an abuse of discretion standard. *See Wall*, 184 S.W.3d at 743. We review the trial court's constitutional ruling *de novo*. *See Woodall v. State*, 336 S.W.3d 634, 642 (Tex. Crim. App. 2011).

## C. Evidentiary Objections

### 1. Relevancy

Texas Rule of Evidence 402 states, "All relevant evidence is admissible, except as otherwise provided by Constitution, by statute, by these rules, or by other rules prescribed pursuant to statutory authority." Texas Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Appellant asserts, without further argument, that Waters' testimony "concerning office policy and processing of family violence cases" was irrelevant to any issue before the jury. The State argues that Waters' testimony regarding the domestic violence division's policy of requiring Waters, as head of the division, to sign off on plea bargains was relevant to Obey's credibility; in turn, this was

---

[3] Waters also testified that Obey had been charged as a felon in possession of a firearm. *See* Tex. Penal Code Ann. § 46.04 (Vernon 2011). Waters testified that this charge was dropped when Obey pled guilty to deadly conduct.

relevant to the jury's determination of the facts at issue in appellant's case. The State further asserts that appellant waived his relevancy complaint by failing to object each time Waters testified regarding division policy.

To preserve error for appeal, a party must object each time inadmissible evidence is offered unless the party obtains a running objection or obtains a ruling on his complaint in a hearing outside the presence of the jury. *See* Tex. R. App. P. 33.1; Tex. R. Evid. 103; *Lopez v. State*, 253 S.W.3d 680, 684 (Tex. Crim. App. 2008). Appellant objected to Waters' testimony as irrelevant, and conducted a voir dire examination outside the presence of the jury. The court overruled appellant's objection outside the presence of the jury. We hold that appellant preserved his relevancy issue for review. *See* Tex. R. Evid. 103; *Lopez*, 253 S.W.3d at 684.

We reject appellant's relevancy contention because the trial court reasonably could have concluded that Waters' testimony was relevant to the issue of Obey's credibility — and therefore relevant to the jury's determination of the disputed facts of this case. Appellant cross-examined Obey regarding his 2010 plea bargain in an attempt to impeach Obey on bias. *See Michael v. State*, 235 S.W.3d 723, 726 (Tex. Crim. App. 2007) (there are five major forms of impeachment: (1) impeachment by prior inconsistent statements; (2) impeachment by another witness; (3) impeachment through bias; (4) impeachment through motive; and (5) impeachment through interest); *see also Abel*, 469 U.S. at 52 ("Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest."). Waters' testimony reasonably could have been understood as rebutting appellant's suggestion that Obey was biased against appellant through Obey's 2010 plea deal. Waters' testimony on division policy established her personal knowledge that there was no link between the plea deal and Obey's testimony in appellant's case. Appellant did not object to appellant's testimony as improper

rehabilitation or as overly prejudicial.  *See* Tex. R. Evid. 403, 608(a); *Michael*, 235 S.W.3d at 726.  Therefore, we conclude that the trial court did not err in admitting Waters' testimony as relevant evidence.  *See* Tex. R. Evid. 401; *see also Hurst v. State*, 406 S.W.3d 617, 625 (Tex. App.—Eastland 2013, no pet.) (evidence that the defendant owned weapons was relevant to support witnesses' explanations that they lied to police because they were scared).

We overrule appellant's issue that the trial court erred in denying his relevancy objection to Waters' testimony.

### 2.    Hearsay

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Tex. R. Evid. 801(d).  Hearsay is not admissible except as otherwise provided by the Rules or by statute.  Tex. R. Evid. 802.

Appellant argues that "[t]he written notations, e-mails and other documentation in Obey's files constituted hearsay" because the documents were out-of-court statements offered to prove the truth of the matters asserted therein. Appellant further argues that "[t]he trial court erred in allowing Waters to offer her conclusion that no special deal had been reached between the State and Obey because[:] 1) that is the office policy[;] and 2) it was not documented in [Obey's case] file."  Appellant asserts that only the prosecutor directly responsible for prosecuting Obey's case could testify that the district attorney's office did not offer Obey a plea deal in exchange for testimony.  The State argues that appellant did not preserve his hearsay issue, and that, even if he had, Waters had personal knowledge that the district attorney's office did not offer Obey a plea deal in exchange for testimony.

We hold that appellant preserved his hearsay issue by conducting a voir dire examination and obtaining a ruling on his objection outside the presence of the jury. *See* Tex. R. Evid. 103; *Lopez*, 253 S.W.3d at 684.

Resolution of the hearsay issue, however, is more complicated. Appellant raises two intertwined but separate issues: (1) whether Waters' testimony regarding the documents in Obey's case file was hearsay, and (2) whether Waters had personal knowledge that the district attorney's office did not offer Obey a plea deal in exchange for his testimony. The first issue is governed by Rules 801 and 802; the second issue is governed by Rule 602.

Rule 602 prohibits a witness from testifying to a matter "unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Tex. R. Evid. 602. Rule 602 is often confused with Rules 801 and 802 regarding hearsay; however Rule 602 provides a separate basis for evidentiary objection. *See* 1 Edward J. Imwinkelried, *McCormick on Evidence* § 10, at 62 (Kenneth S. Broun ed., 7th ed. 2013). Nevertheless, courts typically treat an objection on hearsay grounds as preserving error on grounds that the witness lacked personal knowledge because witness testimony often rests on the statements of others. *See id.*; *see also Elizarraras v. Bank of El Paso*, 631 F.2d 366, 374 (5th Cir. 1980) ("[A]lthough appellant objected on hearsay grounds, not personal knowledge, we will not draw such a fine line.") (discussing Federal Rule of Evidence 602); *Contreras v. State*, No. 05-12-01075-CR, 2013 WL 3956923, at *3 (Tex. App.—Dallas July 30, 2013, no pet.) (mem. op., not designated for publication) (Rule 602 error preserved on hearsay objection). Accordingly, we consider appellant's objection under Rules 602, 801, and 802.

### a. Waters' testimony did not violate Rules 801 and 802

Appellant's contention that Waters testified to out-of-court statements

20

contained in Obey's case file to prove the truth of the matters asserted in the statements raises purely hearsay concerns; appellant's contention is resolved by application of Rules 801 and 802. We determine that the trial court acted within the zone of reasonable disagreement in concluding that Waters' testimony did not violate Rules 801 and 802. *See Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007) ("We will not disturb the [trial court's non-constitutional evidentiary] ruling if it is within the zone of reasonable disagreement.").

The statements Waters testified to include (1) an email written by the prosecutor of appellant's case to the prosecutor of Obey's case, in which the prosecutor in appellant's case stated that Obey is a witness in his case; (2) a notation in Obey's case file, stating that the prosecutor in appellant's case wished to be "kept in the loop;" and (3) unspecified other documents, which collected and summarized the testimony, evidence, and status of the case against Obey.

The trial court reasonably could have concluded that Waters offered the statements in Obey's case file not to prove the truth of the matters asserted in the statements (*i.e.*, that Obey was a witness in appellant's case; that the prosecutor for appellant's case wished to be "kept in the loop;" and that the testimony and evidence in Obey's file were true), but instead to prove that the district attorney's office did not offer Obey a plea deal in exchange for testimony. If offered for the latter purpose, Waters testimony regarding the statements in Obey's case file was not hearsay as defined by Rule 801. *See* Tex. R. Evid. 801; *cf. Lacaze v. State*, 346 S.W.3d 113, 121 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) ("[A]n officer may describe statements made by others for the purpose of showing why the defendant became a suspect and to explain the events and circumstances leading to the defendant's arrest.").

### b.      Waters' testimony did not violate Rule 602

Appellant also objects that Waters lacked personal knowledge about whether the district attorney's office offered Obey a plea deal in exchange for testimony because her knowledge was based on office policy and on the content of Obey's case file — not on Waters' personal knowledge. This contention is resolved by application of Rule 602. We determine that the trial court acted within the zone of reasonable disagreement in concluding that Waters had personal knowledge as required by the Rule. *See Winegarner*, 235 S.W.3d at 790.

Waters testified that, as the domestic violence division chief in 2010, she was required to approve any plea deal offered to a witness in a domestic violence case in exchange for testimony. Waters testified that she knew Obey was not offered a plea deal in his domestic violence case because she did not approve a plea deal, and because nothing in Obey's case file indicated that his plea deal was offered in exchange for testimony. Waters did not state how she acquired personal knowledge that she was required to approve any plea deal in exchange for testimony; nevertheless, her position as division chief implied her personal knowledge. *See Valenzuela v. State & Cnty. Mut. Fire Ins. Co.*, 317 S.W.3d 550, 554 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("An affiant's position or job responsibilities can qualify him to have personal knowledge of facts and establish how he learned of the facts."); 3 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 6:6, at 29 (4th ed. 2013) ("Sometimes the position held by a person, or her job responsibilities, or her general experience . . . may show — and without proof — that the person has enough experience-based knowledge to give certain kinds of testimony.") (discussing Federal Rule of Evidence 602). Therefore, to the extent Waters' testimony was based on her recollection that she did not approve Obey's plea bargain in exchange for testimony, her testimony was

22

not inadmissible for lack of personal knowledge. *See* Tex. R. Evid. 602.[4]

Waters' testimony that Obey was not offered a plea bargain in exchange for testimony also was based on her review of the case file. The case file contained statements derived from the words, actions, and observations of others, which presumably Waters did not witness independently. Therefore, Waters' testimony was based partially on personal knowledge (her knowledge that she did not approve a plea deal in exchange for testimony) and partially on the accounts of others (the documents in Obey's case file). When testimony is based partially on personal knowledge, and partially on second-hand accounts, a court should admit or exclude the testimony according to the overall reliability of the evidence. 1 Imwinkelried, *McCormick on Evidence* § 10, at 65-66; *see United States v. Mandel*, 591 F.2d 1347, 1370 (4th Cir. 1979), *overruled en banc on other grounds*, 602 F.2d 653 (4th Cir. 1979) (instructing the trial court to apply the following rule: if testimony is primarily based on hearsay, it is inadmissible; if testimony is primarily based on admissible evidence, it should be admitted); *Frangias v. State*, 367 S.W.3d 806, 817 (Tex. App.—Houston [14th Dist.] 2012, pet. granted), *rev'd on other grounds*, 392 S.W.3d 642 (Tex. Crim. App. 2013) (trial court did not abuse its discretion in excluding witness testimony partially based on hearsay and partially based on the witness' observations); *cf. Roy v. State*, 813 S.W.2d 532, 541 (Tex. App.—Dallas 1991, pet. ref'd) (if the State puts forth some evidence of personal knowledge, it then becomes the defendant's burden to rebut the evidence

---

[4] Appellant cites no authority suggesting that Waters lacked personal knowledge of office policy despite her position. Although Waters most likely acquired knowledge of the policy from others (unless she developed the policy herself), her knowledge is "personal knowledge" within the meaning of Rule 602. *See Valenzuela*, 317 S.W.3d at 553 (discussing cases in which an individual's position within an organization qualified the individual to have personal knowledge of the organization's policies); *see also* 3 Mueller & Kirkpatrick, *Federal Evidence* § 6:6, at 27 ("A witness can satisfy the knowledge requirement even if her proposed testimony rests in part on information gleaned from outside sources.") (discussing Federal Rule of Evidence 602).

and show that the testimony was "founded entirely on hearsay").

In this case, Waters' testimony that the district attorney's office did not offer Obey a plea bargain in exchange for testimony was based on her personal recollection that she did not approve a plea deal. Waters confirmed her recollection by reviewing Obey's case file, which did not contain any document suggesting that her recollection was incorrect. We hold that the trial court acted within the zone of reasonable disagreement when it overruled appellant's hearsay objection based on Waters' purported lack of personal knowledge. *See* Tex. R. Evid. 602; *Winegarner*, 235 S.W.3d at 790.

We overrule appellant's issue that the trial court erred in denying his hearsay objection to Waters' testimony.

### D.    Confrontation Clause

Appellant argues that the trial court erroneously denied his Sixth Amendment Confrontation Clause objection by allowing Waters to testify even though she was not the prosecutor directly responsible for Obey's case.

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause applies only to testimonial hearsay. *See Davis v. Washington*, 547 U.S. 813, 823 (2006); *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010). Out-of-court statements offered against the accused that are "testimonial" in nature are inadmissible unless the State can show that the out-of-court declarant is presently unavailable to testify in court and the accused had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68 (2004).

Appellant asserts that he was "denied the opportunity to examine [the events leading to Obey's plea deal] because Jane Waters could only offer testimony in her 'supervisory' capacity, and not based on her personal knowledge." He asserts that he had a right to cross-examine the prosecutor directly responsible for Obey's case.

As an initial matter, we reject appellant's suggestion that the Confrontation Clause required the State to produce the prosecutor directly responsible for Obey's case at trial. The Confrontation Clause bars admission of certain out-of-court testimonial statements; it also guarantees an accused the opportunity for effective cross-examination against a witness who appears at trial. *See Delaware v. Fensterer*, 474 U.S. 15, 18-20 (1985) (describing the two categories of Confrontation Clause cases). The Confrontation Clause does not require the State to produce a particular witness against the accused at trial. *See id.*

To the extent appellant argues that Waters' testimony was inadmissible under the Confrontation Clause because it was testimonial hearsay, we also reject this argument. If the trial court correctly determined that Waters' testimony was not hearsay, then her testimony did not violate the Confrontation Clause. *See Crawford*, 541 U.S. at 59 n.9 ("The Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."); *Langham*, 305 S.W.3d at 576.

Alternatively, if Waters' testimony was hearsay, her testimony did not violate the Confrontation Clause because the only statement Waters testified to that was made by the prosecutor directly responsible for Obey's case was a non-testimonial statement.[5] "Generally speaking, a hearsay statement is 'testimonial'

_____

[5] We assume for purposes of Confrontation Clause analysis that the trial court erred in overruling appellant's hearsay objection because we must review the trial court's constitutional legal ruling *de novo*, rather than under an abuse of discretion standard. *See Woodall*, 336 S.W.3d at 642 ("Although we defer to a trial court's determination of historical facts and credibility, we

25

when the surrounding circumstances objectively indicate that the primary purpose of the [out-of-court statement] is to establish or prove past events potentially relevant to later criminal prosecution." *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008) (citing *Davis*, 547 U.S. at 822-23); *see also Sanchez v. State*, 354 S.W.3d 476, 485 (Tex. Crim. App. 2011) ("While the exact contours of what is and is not testimonial continues to be defined by courts, it generally may be said that testimonial statements tend to appear more formal and more similar to trial testimony than non-testimonial statements."). Appellant argues that he had the right to confront the prosecutor directly responsible for Obey's case; he did not assert a right to confront any other individual. The only out-of-court statement attributed to the prosecutor directly responsible for Obey's case was the prosecutor's notation in Obey's case file that the prosecutor in appellant's case wished to be "kept in the loop." We determine that this statement is non-testimonial because its primary purpose was not to prove past events potentially relevant to a later criminal prosecution; therefore, the Confrontation Clause was not violated when Waters testified about this statement. *See De La Paz*, 273 S.W.3d at 680; *Sanchez*, 354 S.W.3d at 485.

We overrule appellant's issue that the trial court erred in denying his Confrontation Clause objection to Waters' testimony.

In conclusion, we overrule appellant's third issue.

## IV. Jury Argument

Appellant contends in his final issue that the trial court erred when it denied his motion for a mistrial based on the State's allegedly improper jury argument at the punishment phase of trial.

---

review a constitutional legal ruling *de novo*.").

Texas Code of Criminal Procedure article 37.07, section 4(a) requires the trial court to instruct as follows when a jury assesses punishment for felony murder:

> Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time . . . .

> It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, the defendant will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time the defendant may earn. If the defendant is sentenced to a term of less than four years, the defendant must serve at least two years before defendant is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

> It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

Tex. Crim. Proc. Code Ann. art. 37.07, § 4(a) (Vernon Supp. 2014).

The State asked the jury to impose the maximum sentence allowed by law. The reporter's record of the State's closing argument shows the following argument, objection, and ruling:

[THE STATE]: [W]hen you look at that charge, it's going to tell you the crime that you convicted [appellant] of, he is parole eligible at thirty years or half of whatever you sentence him to.

So, for instance, [appellant's counsel] asked you to sentence him to five. For instance he's parole eligible after two-and-half —

[APPELLANT'S COUNSEL]: Your Honor, she knows that's improper to go through the parole with this jury.

[THE STATE]: Judge, I'm simply —

[APPELLANT'S COUNSEL]: No. That is just absolutely improper to tell them how much time he would be required to serve.

[THE STATE]: Judge, I'll rephrase.

THE COURT: Sustained.

[APPELLANT'S COUNSEL]: Ask the jury to disregard the last comment from this prosecutor, Your Honor.

THE COURT: Jury, please disregard the last comment.

[APPELLANT'S COUNSEL]: Your Honor, as a matter of law, I move for a mistrial.

THE COURT: Mistrial denied.

Appellant argues that the trial court erred in denying his motion for mistrial. Appellant asserts that appellant's assessed punishment of 46 years' imprisonment and a $10,000 fine "is clear proof that his substantial rights were affected." *See* Tex. R. App. P. 44.2(b) (non-constitutional errors must be disregarded unless they affect a party's "substantial rights"). The State argues that, even if its closing argument was improper, the trial court did not abuse its discretion in denying a mistrial.

As an initial matter, the error appellant alleges is not the trial court's

response to his objection; rather, it is the trial court's failure to grant appellant's motion for a mistrial. *See Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007) (intermediate appellate court erred in analyzing denial of a motion for mistrial under Texas Rule of Appellate Procedure 44.2). In reviewing a trial court's ruling on a motion for mistrial, we must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *See id.* "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

In determining whether improper jury argument warrants a mistrial, we must balance three factors: (1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Archie*, 221 S.W.3d at 700.

We hold that the trial court acted within the zone of reasonable disagreement in denying appellant's motion for mistrial, even assuming that the State's parole argument was improper. The State's comment regarding the parole law was brief, and appellant immediately and successfully objected to the comment. The trial court instructed the jury to disregard the State's comment, and the written jury instructions explicitly stated that the jury could not consider the manner in which the parole law may be applied to appellant. The jury convicted appellant of robbery and murder, and, at the punishment phase of trial, the State introduced evidence that appellant had prior convictions for the manufacture and delivery of a controlled substance and theft. The jury assessed appellant's punishment at 46 years' imprisonment and a $10,000 fine, which was within the midrange of available punishments. *See* Tex. Penal Code Ann. § 12.32 (an individual found

guilty of a first-degree felony shall be punished by imprisonment for life or for any term of not more than 99 years or less than five years, and may be punished by a fine not to exceed $10,000).

We determine that the trial court did not abuse its discretion in denying appellant's motion for a mistrial. *See Archie*, 221 S.W.3d at 700 (the trial court acted within its discretion in denying the defendant's motion for a mistrial at the punishment phase of trial where the State's improper jury comment was brief; the jury was instructed to disregard the comment; and the record included evidence of defendant's prior convictions and bad acts). We overrule appellant's fourth issue.

CONCLUSION

Having overruled appellant's four issues, we affirm the trial court's judgment.

/s/    William J. Boyce
        Justice


Panel consists of Justices Boyce, Jamison, and Donovan.
Do Not Publish — Tex. R. App. P. 47.2(b).